**No. 26-2217**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

SARAH JANE HUNT,
*Interested Party*

RANDALL KING; SCOTT BUTTERFIELD; ROBERT KOEHLER; MICHAEL MERX;
BRUCE WALDMAN, *on behalf of themselves and others similarly situated*,
*Plaintiffs-Appellees*,

*v.*

MONSANTO COMPANY,
*Defendant-Appellee,*

*v.*

CRAIG BOYLAN; DAVID CHILDRESS; XAVIER ESTRADA; LORI ANN FAIN;
DONNA MASON; FREDERICK O'NEILL; EDWARD PETER RANKIN; WILLIAM ROBBINS;
WILLIAM SZABO; PATRICIA VEAL,
*Objectors-Appellants.*

On Appeal from the United States District Court for the
Eastern District of Missouri, Eastern Division
Case No. 4:26-CV-813 (Hon. Henry Edward Autrey)

## Appellants' Brief

| | |
|---|---|
| T. Roe Frazer, II | Ashley C. Keller |
| R. Prescott Sifton, Jr. | John J. Snidow |
| FRAZER  PLC | KELLER POSTMAN LLC |
| 30 Burton Hills Blvd., Ste. 450 | 150 N. Riverside Plaza, Suite 4100 |
| Nashville, TN 37215 | Chicago, Illinois 60606 |
| Tel: (615)647-6464 | Tel.: 312-741-5220 |
| scott@frazer.law | ack@kellerpostman.com |
| | |
| | *Counsel for Appellants* |

# SUMMARY OF THE CASE

This is an appeal of the District Court for the Eastern District of Missouri's order remanding the case to Missouri state court. After more than a decade of litigation relating to Monsanto's herbicide, Roundup, Monsanto and the Named Plaintiffs (the "Settling Parties") initiated this settlement-only class action in Missouri state court. The action seeks one thing: approval of a proposed settlement agreement. On May 21, 2026, Appellants ("Objectors") filed their objections to the proposed settlement in state court. They filed a notice of removal the following day. And 18 days later, they filed a motion to intervene as of right under Rule 24. App.1572, R.Doc. 84. On June 17, 2026, the district court ordered remand on the ground that Objectors "are not defendants in the action and have no basis upon which to remove it." App.1631, R.Doc. 93 at 3. Objectors noticed this appeal ninety-four minutes later, and alternatively petitioned the Court to accept the appeal under 28 U.S.C. § 1453 on June 29, 2026.

Because this case turns on complicated issues concerning this Court's and the lower court's jurisdiction; the applicability of various common-law principles to the removal statutes; and the interplay of Rules 21, 23, and 24, Objectors respectfully request 20 minutes for oral argument.

i

Appellate Case: 26-2217     Page: 2     Date Filed: 08/06/2026 Entry ID: 5669459

# DISCLOSURE STATEMENT

Appellants are natural persons and so no disclosure statement under Federal Rule of Appellate Procedure 26.1 and 8th Circuit Local Rule 26.1A is necessary.

Appellate Case: 26-2217    Page: 3    Date Filed: 08/06/2026 Entry ID: 5669459

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE ................................................................. i

DISCLOSURE STATEMENT ............................................................. ii

TABLE OF AUTHORITIES .............................................................. v

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES .........................................................3

STATEMENT OF THE CASE ............................................................5

STANDARD OF REVIEW ...............................................................14

SUMMARY OF THE ARGUMENT...................................................15

ARGUMENT....................................................................................17

    I.      By Timely Objecting, Objectors Became Parties To The
          Settlement-Only Class Proceedings...................................................18

    II.    The District Court Was Required To Realign Objectors As
          Defendants With The Right To Remove. ...........................................26

        A.    Who "The Defendants" Are Turns On The Realities Of The
            Dispute...................................................................................27

        B.    Federal Courts Are Required To Realign The Parties
            According To Their Actual Interests In The Case.....................29

        C.    Objectors Are Defendants Because They Are The Only
            Parties Opposing The Relief Sought In The Case. ....................36

        D.    Realigned Defendants Are "The Defendants" Under
            §§ 1441(a) and 1453(b). .........................................................42

    III.  Even Without Realignment, Objectors Became Defendants By
          Intervening As Of Right. ....................................................................46

Appellate Case: 26-2217    Page: 4    Date Filed: 08/06/2026 Entry ID: 5669459

**Page**

III. Even Without Realignment, Objectors Became Defendants By Intervening As Of Right. ...................................................................46

    A. Objectors Had A Right To Intervene............................................48

    B. Objectors Are Aligned As Defendants Post-Intervention. .......56

    C. Objectors' Intervention Would Have Made Them The Very "Defendants" That Could Remove. ............................................57

CONCLUSION ...................................................................................................60

CERTIFICATE OF COMPLIANCE .................................................................61

Appellate Case: 26-2217    Page: 5    Date Filed: 08/06/2026 Entry ID: 5669459

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcarez v. Akorn, Inc.*,
99 F.4th 368 (7th Cir. 2024)................................................................52, 53

*Am. Civ. Liberties Union of Minn. v. Tarek
ibn Ziyad Acad.*, 643 F.3d 1088 (8th Cir. 2011)................................................48

*Am. Fire & Cas. Co. v. Finn*,
341 U.S. 6 (1951)................................................................59

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................10, 11, 24, 25

*Ashford v. Aeroframe Servs., L.L.C.*,
96 F.4th 783 (5th Cir. 2024)................................................................32, 41

*Bell v. Hershey Co.*,
557 F.3d 953 (8th Cir. 2009)................................................................14

*Broidy v. State Mut. Life Assur. Co. of Worcester, Mass.*,
186 F.2d 490 (2d Cir. 1951)................................................................32

*Carlson v. Arrowhead Concrete Works, Inc.*,
445 F.3d 1046 (8th Cir. 2006)................................................................4, 55

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004)................................................................9

*Chicago, R.I. & P.R. Co. v. Stude*,
346 U.S. 574 (1954)................................................................ 27, 28, 29, 34, 42, 45

*City of Indianapolis v. Chase Nat'l Bank
of City of New York*,
314 U.S. 63 (1941)................................................................ 3, 13, 29, 30, 32, 36, 37, 40

*City of Vestavia Hills v. Gen. Fid. Ins.*,
676 F.3d 1310 (11th Cir. 2012)................................................................29, 30, 33, 36, 56

*Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*,
621 F.3d 554 (6th Cir. 2010)................................................................33

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005)................................................................51

Appellate Case: 26-2217    Page: 6    Date Filed: 08/06/2026 Entry ID: 5669459

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Corbin v. Van Brunt,*
  105 U.S. (15 Otto) 576 (1881) ...............................................................31

*Dart Cherokee Basin Operating Co. v. Owens,*
  574 U.S. 81 (2014) ..............................................................14, 15, 38

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002) ...................................... 3, 18, 19, 20, 21, 23, 25

*Dryden v. Dryden,*
  265 F.2d 870 (8th Cir. 1959) .............................................30, 36, 40

*Eubank v. Pella Corp.,*
  753 F.3d 718 (7th Cir. 2014) ...................................................................9

*Evers v. Watson,*
  156 U.S. 527 (1895) .............................................................................32

*Qatalyst Inc. ex rel. Expect Quest, LLC v. Pipes.AI, LLC,*
  No. 25-11396, 2025 WL 3124894 (11th Cir. Nov. 7, 2025) ...................27, 37

*FTC v. Johnson,*
  800 F.3d 448 (8th Cir. 2015) ...........................................................15, 50

*GE Betz, Inc. v. Zee Co.,*
  718 F.3d 615 (7th Cir. 2013) ...............................29, 39, 42, 46, 56

*Glorvigen v. Cirrus Design Corp.,*
  581 F.3d 737 (8th Cir. 2009) ...............................................................55

*Godwin v. Farmers New Century Ins.,*
  123 F. App'x 97 (4th Cir. 2005) .........................................................32

*Grainger v. Ottawa Cnty.,*
  90 F.4th 507 (6th Cir. 2024) ...............................................................51

*Grand China Buffett & Grill, Inc. v. State Auto Prop. & Cas. Co.,*
  No. 1:16-cv-159, 2016 WL 6078343 (N.D. W.Va. Oct. 17, 2016) ................35

*Gurney's Inn Resort & Spa Ltd. v. Benjamin,*
  743 F. Supp. 2d 117 (E.D.N.Y. 2010) ...............................................34

*Holbein v. TAW Enters., Inc.,*
  983 F.3d 1049 (8th Cir. 2020) ...........................................................4, 57, 59

Appellate Case: 26-2217   Page: 7   Date Filed: 08/06/2026 Entry ID: 5669459

**Page(s)**

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.,*
535 U.S. 826 (2002)................................................................44

*Home Depot U.S.A. v. Jackson,*
587 U.S. 435 (2019)...................................................3, 42, 43, 44, 46

*Jacks v. Meridian Res. Co.,*
701 F.3d 1224 (8th Cir. 2012) ..............................................................2

*Agyei ex rel. Jenkins v. Missouri,*
807 F.2d 657 (8th Cir. 1986).................................................37

*Kamilewicz v. Bank of Boston Corp.,*
100 F.3d 1348 (7th Cir. 1996)...................................................10, 11

*Klein v. Manor Healthcare Corp.,*
19 F.3d 1433, 1994 WL 91786 (6th Cir. 1994) ...............................58

*Littlefield v. Acadia Ins.,*
392 F.3d 1 (1st Cir. 2004)...................................................32

*Lott v. Scottsdale Ins.,*
811 F. Supp. 2d 1220 (E.D. Va. 2011) ...........................................36

*Mace v. Van Ru Credit Corp.,*
109 F.3d 338 (7th Cir. 1997)...................................................9

*Mason City & Fort Dodge R.R. Co. v. Boynton,*
204 U.S. 570 (1907)..........................................3, 28, 33, 35, 42, 45

*McKeen v. Cont'l Cas. Co.,*
No. 10-10624, 2010 WL 3325200 (E.D. Mich. Aug. 19, 2010).....................34

*Mexican Nat'l R. Co. v. Davidson,*
157 U.S. 201 (1895)...................................................44

*Monsanto Co. v. Durnell,*
146 S. Ct. 2001 (2026)...................................................7

*Moody v. Com. Ins. Co. of Newark, N.J.,*
753 F. Supp. 198 (N.D. Tex. 1990) ...............................................58

*Mullaney v. Anderson,*
342 U.S. 415 (1952)...................................................59

Appellate Case: 26-2217   Page: 8   Date Filed: 08/06/2026 Entry ID: 5669459

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Nat'l Parks Conservation Ass'n v. EPA,*
   759 F.3d 969 (8th Cir. 2014) ........................................................15, 48, 49, 50

*Newman-Green, Inc. v. Alfonzo-Larrain,*
   490 U.S. 826 (1989) .................................................................................59

*Pac. R.R. v. Ketchum,*
   101 U.S. (11 Otto) 289 (1879) ...............................................................31

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) .................................................................................24

*Randolph v. Emp.*
   *'s Mut. Liab. Ins. of Wis.,* 260 F.2d 461 (8th Cir. 1958); ...............33

*Removal Cases,*
   100 U.S. (10 Otto) 457 (1879) ..........................................................31, 35

*Reynolds v. Beneficial Nat'l Bank,*
   288 F.3d 277 (7th Cir. 2002) .............................................................11, 52

*In re Roundup Prods. Liab. Litig.,*
   541 F. Supp. 3d 1004 (N.D. Cal. 2021) ..................................................8

*Royal Canin U.S.A., Inc. v. Wullschleger,*
   604 U.S. 22 (2025) ...................................................................................22

*Shalala v. Ill. Council on Long Term Care, Inc.,*
   529 U.S. 1 (2000) .....................................................................................45

*Shamrock Oil & Gas Corp. v. Sheets,*
   313 U.S. 100 (1941) .................................................................................44

*Sharma v. Deutsche Bank Nat'l Tr. Co. ex rel. HSI Asset Loan*
   *Obligation Tr.*
   2007-1, 23 F.4th 1167 (9th Cir. 2022) ..............................................45, 46

*Shouman v. Schouman,*
   No. Civ. A. 96-11588-REK, 1996 WL 721195 (D. Mass. Dec.
   10, 1996) ...................................................................................................34

*Smith v. Bayer Corp.,*
   564 U.S. 299 (2011) .............................................................................21, 22

Appellate Case: 26-2217    Page: 9    Date Filed: 08/06/2026 Entry ID: 5669459

**Page(s)**

*Smith v. SEECO, Inc.*,
865 F.3d 1021 (8th Cir. 2017)................................................2, 4, 51, 54, 55

*Soliman v. Philip Morris Inc.*,
311 F.3d 966 (9th Cir. 2002).....................................................................58

*Sparks Constructors, Inc. v. Hartzell Hardwoods, Inc.*, No. 2:15-cv-00067-NCC, 2015 WL 7075964
(E.D. Mo. Nov. 13, 2015) .........................................................................56

*Standard Fire Ins. v. Knowles*,
568 U.S. 588 (2013)................................................................4, 15, 46, 51

*Standard Oil Co. v. Perkins*,
347 F.2d 379 (9th Cir. 1965).....................................................................33

*State Farm Fire & Cas. Co. v. Tashire*,
386 U.S. 523 (1967)..................................................................................19

*Swinton v. SquareTrade, Inc.*,
960 F.3d 1001 (8th Cir. 2020)..........................................................4, 11, 52

*Telekenex, Inc. v. Axis Reinsurance Co.*,
No. C12-1617-JCC, 2012 WL 13028156
(W.D. Wash. Nov. 27, 2012)................................................................34, 36

*Texas v. United States*,
523 U.S. 296 (1998)..................................................................................38

*Thermtron Prods., Inc. v. Hermansdorfer*,
423 U.S. 336 (1976)....................................................................................4

*Things Remembered, Inc. v. Petrarca*,
516 U.S. 124 (1995)................................................................................2, 4

*Toronto-Dominion Bank v. Cent. Nat'l Bank & Tr. Co.*,
753 F.2d 66 (8th Cir. 1985)....................................................................4, 55

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..................................................................................49

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966)..................................................................................47

Appellate Case: 26-2217   Page: 10   Date Filed: 08/06/2026 Entry ID: 5669459

# TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

*United States v. Craig,*
94 F.4th 752 (8th Cir. 2024)...................................................................................55

*Universal Concrete Prods. Corp. v. Peerless Ins.,*
No. CCB-08-00317, 2008 WL 4104171 (D. Md. Aug. 21, 2008)...................35

*Universal Underwriters Ins. v. Wagner,*
367 F.2d 866 (8th Cir. 1966).................................................................30, 36, 41

*Van Horn v. Trickey,*
840 F.2d 604 (8th Cir. 1988)...................................................................................25

*Venner v. Great N. Ry. Co.,*
209 U.S. 24 (1908)...............................................................................................32, 35

*Vill. of Oakwood v. State Bank & Tr. Co.,*
481 F.3d 364 (6th Cir. 2007)...................................................................................47

*Westerfeld v. Indep. Processing, LLC,*
621 F.3d 819 (8th Cir. 2010).....................................................................................1

*Williams v. Morgan,*
111 U.S. 684 (1884)...................................................................................................20

*Wis. Dep't of Corr. v. Schacht,*
524 U.S. 381 (1998)...................................................................................................41

*Wolf v. Kennelly,*
574 F.3d 406 (7th Cir. 2009)...................................................................................40

*Yellowbird Bus Co. v. Lexington Ins.,*
450 F. App'x 213 (3d Cir. 2011) ............................................................................32

**Statutes**

28 U.S.C.
§ 1291............................................................................................................2, 4
§ 1332(d) ......................................................................................................1, 47
§ 1332(d)(2)(A) ................................................................................................19
§ 1441(a) ...................................................................................3, 4, 15, 27, 45
§ 1447(a) ......................................................................................................4, 47
§ 1447(c) ...............................................................................................................4
§ 1447(d) ...............................................................................................................4

Appellate Case: 26-2217     Page: 11     Date Filed: 08/06/2026 Entry ID: 5669459

**Page(s)**

§ 1447(e) ............................................................................................59

§ 1453 ..................................................................................................7

§ 1453(b) ...............................................................................1, 3, 4, 15

§ 1453(c) ..............................................................................................2

§ 1453(c)(1) .........................................................................................3

§ 2072 ................................................................................................24

**Other Authorities**

3 William B. Rubenstein, *Newberg on Class Actions* § 9:34 (5th ed.
2013 & Supp. 2017) ..........................................................................51

5A *Wright & Miller's Federal Practice & Procedure* § 1321
(4th ed., database updated Apr. 2026) .............................................27

13E *Wright & Miller's Federal Practice & Procedure (Juris.)* § 3607
(2007 Supp.) ....................................................................................39

14C *Wright &Miller's Federal Practice & Procedure (Juris.)* § 3730
(Rev. 4th ed., database updated Apr. 2026) ....................................33

Fed. R. App. P.
4(a)(1) ...............................................................................................3
26(a)(1)(C) ........................................................................................3

Fed. R. Civ. P.
8(a) ...................................................................................................43
8(b) ...................................................................................................43
13(a) .................................................................................................43
13(g) .................................................................................................43
14(a) .................................................................................................43
20(a)(2) .............................................................................................56
20(a)(2)(A) ........................................................................................57
20(a)(2)(B) ........................................................................................57
21 .............................................................................................4, 47, 59
24 Advisory Committee note to 1966 amendment ..............................51
24(a) ............................................................................................4, 48
24(a)(2) .............................................................................................50

Martin H. Redish & Andrianna D. Kastanek, *Settlement Class
Actions, the Case-or-Controversy Requirement, and the Nature of
the Adjudicatory Process*, 73 U. Chi. L. Rev. 545 (2006) ................10

Appellate Case: 26-2217    Page: 12    Date Filed: 08/06/2026 Entry ID: 5669459

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). CAFA gives federal district courts original jurisdiction over class actions that involve more than $5,000,000 in controversy and at least 100 minimally diverse parties. *Id.*; *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). It similarly allows for the removal of class actions. 28 U.S.C. § 1453(b). The Settling Parties seek approval of a more than $7 billion settlement, which exceeds CAFA's $5,000,000 amount-in-controversy requirement. App.308–09, R.Doc. 1-7 at § 4.1. The proposed class includes "tens of thousands of members," which exceeds CAFA's 100-member minimum. App.168, R.Doc. 1-5 at ¶ 172. And there is minimal diversity because at least one member of the nationwide class is a citizen of a different state than Monsanto, which is incorporated in Delaware and has its principal place of business in Missouri, App.130, R.Doc. 1-5 at ¶ 17 (Monsanto). *E.g.*, App.128, R.Doc. 1-5 at ¶ 11 (Florida Named Plaintiff); App.549, R.Doc. 1-10 at ¶ 1.b (Iowa Objector). Similarly, at least one Objector is a citizen of a different state than Monsanto and Named Plaintiffs. *Id.*

1

There are three independent bases for this Court's jurisdiction over the appeal. *See* Appellants' Opp'n to Monsanto's Mot. to Dismiss (July 1, 2026). First, the district court's order was not based on a "lack of subject-matter jurisdiction" or a "defect in removal procedure," which are the only "grounds for remand recognized by § 1447(c)." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127–28 (1995). So the Court has jurisdiction under 28 U.S.C. § 1291. *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1229 (8th Cir. 2012) (a remand order "based on some other, non-section 1447(c) ground" is "a final decision appealable under 28 U.S.C. § 1291") (citation omitted), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021).

Second, the district court's order of remand was predicated on its denial of Objectors' intervention of right, which was "immediately appealable as a final judgment" under § 1291. *Smith v. SEECO, Inc.*, 865 F.3d 1021, 1023 (8th Cir. 2017) (per curiam) (citation omitted). Third, even if the remand order was not appealable of right, this Court may still exercise jurisdiction over this appeal based on Objectors' petition for leave to appeal under 28 U.S.C. § 1453(c).

2

Objectors filed their notice of appeal ninety-four minutes after the district court entered its order of remand. App.1632, R.Doc. 94 (Order of Remand); App.1634, R.Doc. 95 (Notice of Appeal). That notice of appeal was timely because it was filed within 30 days after entry of the order appealed from. Fed. R. App. P. 4(a)(1). On June 29, 2026, Objectors filed an alternative petition to appeal under CAFA. *See* Petition for Permission to Appeal Under 28 U.S.C. § 1453(c) (June 29, 2026). That Petition was timely because it was filed ten days after the district court entered its order of remand. 28 U.S.C. § 1453(c)(1); Fed. R. App. P. 26(a)(1)(C) (if the deadline falls on a weekend, it is extended to the following Monday).

## STATEMENT OF THE ISSUES

1.      Whether, in a settlement-only class action where the named plaintiffs and defendant sought *precisely the same* relief, the district court erred in concluding that the *only* litigants opposing that relief cannot be "defendants" within the meaning of 28 U.S.C. §§ 1441(a) and 1453(b).

*Home Depot U.S.A. v. Jackson*, 587 U.S. 435 (2019).

*Devlin v. Scardelletti*, 536 U.S. 1 (2002).

*City of Indianapolis v. Chase Nat'l Bank of City of New York*, 314 U.S. 63 (1941).

*Mason City & Fort Dodge R.R. Co. v. Boynton*, 204 U.S. 570 (1907).

3

28 U.S.C. §§ 1441(a), 1453(b)

2.      Whether an order of remand that does not colorably invoke the grounds specified in 28 U.S.C. § 1447(c) is reviewable under 28 U.S.C. § 1291.

*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995).

*Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 345–46 (1976).

*Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046 (8th Cir. 2006).

*Holbein v. TAW Enters., Inc.*, 983 F.3d 1049 (8th Cir. 2020).

28 U.S.C. § 1447(c), (d)

3.      Whether the district court erred in denying a motion to intervene as of right under Federal Rule of Civil Procedure 24(a) before issuing an order of remand premised on the intervenors' lack of party status.

*Standard Fire Ins. v. Knowles*, 568 U.S. 588 (2013)

*Swinton v. SquareTrade, Inc.*, 960 F.3d 1001 (8th Cir. 2020)

*Smith v. SEECO, Inc.*, 865 F.3d 1021 (8th Cir. 2017)

*Toronto-Dominion Bank v. Cent. Nat'l Bank & Tr. Co.*, 753 F.2d 66 (8th Cir. 1985)

28 U.S.C. § 1447(a)

Fed. R. Civ. P. 21, 24(a)

4

# STATEMENT OF THE CASE

Over the last decade, more than one-hundred thousand ordinary people have sued Monsanto because its flagship product, Roundup, gave them Non-Hodgkin's Lymphoma (NHL), a rare and deadly form of cancer. Juries have returned substantial, often record-breaking verdicts for some of Monsanto's victims. Tens of thousands of cases remain pending in state and federal courts throughout the country. For years to come, untold scores of new victims will learn that they, too, developed NHL from Roundup. And they will ask for their day in court to hold Monsanto accountable. But not if Monsanto and the Named Plaintiffs get their way.

On February 17, 2026, the Settling Parties marched arm-in-arm into a Missouri state court with one objective: obtain court approval of a "class action settlement" that would wipe away the claims of every Roundup victim—past, present, *and future*—through the *fiction* of representative litigation. The Settling Parties had already executed the proposed settlement before the case was even docketed. Monsanto did not answer the Named Plaintiffs' nominal complaint, which it helped draft. And the Settling Parties

Appellate Case: 26-2217    Page: 17    Date Filed: 08/06/2026 Entry ID: 5669459

did not ask the court to resolve a single dispute. Instead, they *jointly*[1] moved for preliminary approval of their proposed settlement contemporaneously with their off-the-record "meeting" with the state court. The state court preliminarily approved the settlement two weeks later.

Under the preliminary approval order, the only way proposed class members could challenge the settlement was to object. To do so, absent class members had to: (1) file their objections on the state-court docket, (2) identify evidence and legal authority supporting the objections, (3) publicly disclose their sensitive health information on the state-court docket, (4) subject themselves to discovery, and (5) direct their attorneys to enter appearances in the case along with a sworn declaration of representation. In other words, they had to cease being *absent* class members, show up in court, and make themselves *parties* to the case. Appellants here did just that. And having objected, they found themselves standing on one side of the case (opposing the settlement), with both Monsanto and Named Plaintiffs on the other side

---

[1] The preliminary approval motion was technically brought "unopposed" by Named Plaintiffs. But Monsanto and Named Plaintiffs later filed a 200-page joint motion for final approval together.

(advocating for the settlement). Objectors were, in reality, defendants (and the *only* defendants).

So Objectors did what defendants are entitled to do in nationwide class-action cases filed in state court. They removed the case to federal court. 28 U.S.C. § 1453(b). In a terse opinion with little analysis, the district court remanded on one basis: that Objectors "are not defendants in the action" and so they "have no basis upon which to remove." App.1631; R.Doc. 93 at 3. To see the error in the district court's order, this Court need only answer one question: if Objectors are not "the defendants" in this case, who is?

### *History Of The Roundup Litigation*

In 2015, the International Agency for Research on Cancer "classified glyphosate as a probable carcinogen." *Monsanto Co. v. Durnell*, 146 S. Ct. 2001, 2008 (2026). Since then, "over 125,000 plaintiffs" have sued Monsanto because its glyphosate-based Roundup products gave them cancer. App.287, R.Doc. 1-7 at 6. Twenty-four cases "have been tried to verdict across 10 jurisdictions," with more than $7 billion awarded in plaintiff verdicts across 11 cases. *Id*. In 2020, Monsanto and "[a]ttorneys for certain individual plaintiffs in the MDL" attempted to resolve Monsanto's entire Roundup liability through a proposed $10 billion class settlement that would

7

have released the claims of every Roundup plaintiff (and every future Roundup plaintiff). *In re Roundup Prods. Liab. Litig.*, 541 F. Supp. 3d 1004, 1005 (N.D. Cal. 2021). Judge Chhabria, the district court judge presiding over the Roundup MDL, roundly rejected the deal as "clearly unreasonable" and riddled with "glaring flaws." *Id.* at 1006.

Five years later, on February 17, 2026, Monsanto decided to try again. But this time, the proposed nationwide settlement was presented to a Missouri state court for the singular purpose of adjudicating the settlement-only class petition. *See* App.124, R.Doc. 1-5. At literally the exact same time, Monsanto and Class Counsel created the case, filed a nominal "Class Action Petition," *id.*, and filed an *unopposed* motion for preliminary approval, App.187, R.Doc. 1-6, attaching the already-executed "Class Action Settlement Agreement," App.282, R.Doc. 1-7. The proposed settlement is nearly identical to the one Judge Chhabria rejected five years earlier. It seeks to release all existing *and* future claims of existing *and* future Roundup victims. There is one material difference, however. Monsanto seeks to wipe away hundreds of thousands (perhaps millions) of claims for nearly $3 billion *less* than the proposed settlement in the MDL. App.308, R.Doc. 1-7 at

8

22 (Monsanto's "payment obligation" under the proposal would be "up to $7.25 billion").

Moments after the proposed settlement and motion for preliminary approval were filed, the Missouri state court held a prearranged, off-the-record private meeting (not a public hearing) to "file the agreement." App.11, R.Doc. 1 at ¶ 4. Just two weeks later, on March 4, 2026, the state court granted the unopposed motion for preliminary approval. App.516, R.Doc. 1-8.

### *Settlement-Only Class Actions Are Inherently Non-Adversarial And Primed For Abuse*

The class action is "an ingenious procedural innovation." *Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014). It was created because "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.). "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

9

But settlement-only class actions—cases filed for the sole purpose of obtaining court approval of a pre-executed agreement—pose many problems. Principal among them is that a settlement-only class action "deprives the court of the benefit of adversarial litigation concerning the satisfaction of Rule 23's requirements, thereby seriously limiting its ability to protect absent class members." Martin H. Redish & Andrianna D. Kastanek, *Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of the Adjudicatory Process*, 73 U. Chi. L. Rev. 545, 562 (2006). Any settlement-only class (by definition) forces the court to "face a bargain proffered for its approval without benefit of adversarial investigation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). Indeed, "a settlement followed by a fairness hearing remains more like a contract than like litigation." *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1352 (7th Cir. 1996) (Easterbrook, J., dissenting from denial of rehearing en banc). That allows the nominal plaintiffs and defendants to "put one over on the court, in a staged performance." *Id.*

The perversion is obvious: "[t]he lawyers support the settlement to get fees; the defendants support it to evade liability; the court can't vindicate the class's rights because the friendly presentation means that it lacks essential

Appellate Case: 26-2217     Page: 22     Date Filed: 08/06/2026 Entry ID: 5669459

information." *Id.* (collecting scholarly commentary). So mass-tort defendants (like Monsanto) are incentivized to hold "reverse auctions," where they "pick[] the most ineffectual class lawyers to negotiate a settlement with in the hope that the [trial] court will approve a weak settlement that will preclude other claims against the defendant." *Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1005 (8th Cir. 2020) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)). Some lawyers predictably sprint to that siren's call.

### *Objectors Became Parties To The Case By Objecting To The Settlement*

Because this case is a settlement-only class action, the Settling Parties were never going to provide the state court with the "adversarial investigation" required to adequately assess the settlement. *Amchem*, 521 U.S. at 621. The only participants who could (or would) are class objectors. Under the preliminary approval order, any putative class member who wanted to object to the proposed deal was required to "file with the Court a written statement of the objections." App.530, R.Doc. 1-8 at ¶ 34. That statement—filed on the public docket—had to include "the specific reasons . . . for eac[h] objection, including any evidence and legal authority," *id.* ¶ 34(a), "proof of a Qualifying Diagnosis and the date [it] was made," *id.*

Appellate Case: 26-2217     Page: 23     Date Filed: 08/06/2026 Entry ID: 5669459

¶ 34(b), a "full history of prior objections" by the objector and their counsel, App.531, R.Doc. 1-8 at ¶ 34(e), and a wet signature, *id.* ¶ 34(f). Any objector subjected themselves to discovery from the Settling Parties. App.532, R.Doc. 1-8 ¶ 38. And if an objector wanted to be represented by counsel (which, as a practical matter, they *had to be* in order to identify sufficient "evidence and legal authority"), their counsel had to file "a notice of appearance with the Court" and "a sworn declaration attesting to his or her representation of" the objector. App.531, R.Doc. 1-8 at ¶ 36. By doing this, the objectors ceased to be *absent* class members—in fact and law. They appeared in court, obtained representation, subjected themselves to adversarial discovery, and joined issue to protect their concrete rights and interests.

Objectors here are ten working-class people who developed NHL after regularly using Roundup. They retained undersigned counsel to help them litigate their objections to the proposed settlement, and they complied with the process the state trial court set forth. Their counsel (i) appeared in the state-court action, (ii) filed a sworn statement attesting to their representation of Objectors, (iii) agreed to the requirement that Objectors be subject to discovery from the Settling Parties, and (iv) filed the evidentiary and legal objections to the proposed class settlement on May 21, 2026. *See*

12

App.538, R.Doc. 1-9 (Objections). Objectors made themselves *parties* to the case, as was required to litigate their objections.

Objectors, alongside other objectors, became not just parties, but the *only* parties opposing the relief the Settling Parties jointly sought. Because Monsanto and Named Plaintiffs were (and are) *fully aligned* on the "primary and controlling matter in dispute," *City of Indianapolis v. Chase Nat'l Bank of City of New York*, 314 U.S. 63, 69 (1941) (citation omitted), they were (and are) "colloquially speaking, partners in litigation," *id.* at 74. Objectors, as the only parties opposing the settlement, were the only defendants. So, on May 22, 2026, they exercised their right to remove under 28 U.S.C. §§ 1441(a) and 1453(b). *See* App.9, R.Doc. 1 (Notice of Removal). They also filed a motion to intervene as of right on June 9, 2026. App.1572, R.Doc. 84. That motion was filed to remove all doubt concerning their party status, which they had *already* obtained through their timely objections.

### The District Court Ordered Remand Based Exclusively On The Case Caption

Named Plaintiffs and Monsanto moved to remand. App.936, R.Doc. 17 (Monsanto); App.1117, R.Doc. 25 (Named Plaintiffs). Both raised the same principal arguments: that Objectors cannot be "the defendants" under the

13

removal statute, that Objectors were not parties to the case, and that realignment cannot apply to § 1441(a)'s and § 1453(b)'s requirement that only "defendants" can remove. *Id.* Just two days after the motions were briefed, the district court remanded the case. App.1632, R.Doc. 94. With little analysis and *no* engagement with the Supreme Court precedent Objectors cited, the district court held that "Objectors are not defendants in the action and have no basis upon which to remove it." App.1631, R.Doc. 93 at 3. That, the district court baldly concluded, meant the district court "lacks jurisdiction and the case must be remanded." *Id.* The district court "directed" the "Clerk of Court . . . to remand this case to" the state court. App.1632, R.Doc. 94. Objectors noticed this appeal ninety-four minutes later. App.1634, R.Doc. 95.

## STANDARD OF REVIEW

This Court reviews de novo a district court's order of remand. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Because courts "apply the same liberal rules to removal allegations that are applied to other matters of pleading," good-faith allegations in the notice of removal are accepted. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (cleaned up). Although there is ordinarily a presumption in favor of remand, no such

14

"antiremoval presumption attends cases invoking CAFA, [a statute] Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.* at 89 (citing *Standard Fire Ins. v. Knowles*, 568 U.S. 588, 595 (2013)). This Court similarly reviews de novo "[t]he denial of a motion to intervene of right." *FTC v. Johnson*, 800 F.3d 448, 451 (8th Cir. 2015) (citation omitted); *see also Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 974 (8th Cir. 2014).

## SUMMARY OF THE ARGUMENT

Under 28 U.S.C. §§ 1441(a) and 1453(b), "the defendant or the defendants" may remove. But this settlement-only class action was filed with no real defendant in the complaint's caption. Monsanto and the Named Plaintiffs executed their agreement before the case existed, drafted the class petition together, and jointly asked the court for the only relief the case seeks: approval of that agreement. On the only question presented for judicial resolution, they want the same thing. Objectors alone want the opposite. If Objectors are not the defendants here, there are no defendants.

Objectors became parties when they timely objected. Binding Supreme Court precedent holds that an objecting class member is a party for purposes of appealing approval of a class settlement, because it is the act of appearing and objecting that confers party status. The preliminary approval order here

15

ensured that Objectors appeared and objected. To object at all, Objectors had to appear in the case, marshal evidence and authority, and submit to discovery. When Objectors did so, they were no longer absent or unnamed class members. They were parties.

What type of party? Defendants. Federal law determines who counts as a "defendant." And to make that determination, federal law looks to what the parties *seek* rather than what the pleader *calls* them. For more than a century, federal courts have been duty bound to set the pleadings aside and arrange the parties according to their real interests—and to do so *before* deciding whether removal was proper.

The district court did not even pretend to carry out that duty. It held that Objectors "are not defendants in the action" because the case caption said so, without even so much as gesturing to the controlling precedent. Properly aligned, the Settling Parties stand on one side and Objectors on the other. And they stand on either side of the action as set out in the original pleading, not some other action created by a counter- or crossclaim.

Realignment requires reversal. But the district court's denial of Objectors' Rule 24(a) motion does too. Class members have a *right* to intervene where the representatives do not adequately represent them. And

16

on the uncontested allegations—which must be accepted as true—the representation here was inadequate. The district court could not have held that Objectors were not defendants without implicitly denying intervention. When that is so, the intervention motion must be treated as having been denied and that denial must be evaluated for error. Because § 1441(a) is nonjurisdictional, Objectors' intervention should have supplied the very "basis upon which to remove" the district court found missing.

The order of remand should be reversed.

## ARGUMENT

The district court's remand order rests on a premise the Supreme Court rejected more than a century ago: that "the defendant" under the removal statutes is determined by the case caption alone. But federal law— not the complaint's labels—determines who is a defendant for purposes of removal. And federal law looks to what the parties seek, not what they are called. So federal courts must independently assess the alignment of the parties by looking to their actual interests in the litigation. Parties *seeking* the relief pursued in the complaint stand on one side as plaintiffs. Parties *opposing* that relief stand on the other as defendants.

17

Application of that time-honored rule here is straightforward. Objectors are the defendants. They became parties when they timely objected to the proposed settlement. As parties, they are the only litigants opposing the only relief sought in this action. Federal law thus required the district court to align them as defendants, vesting them with the right to remove. And even without realignment, Objectors *still* should have become defendants through intervention of right. Either way, Objectors are defendants and their removal was proper.

## I. By Timely Objecting, Objectors Became Parties To The Settlement-Only Class Proceedings.

A threshold issue is whether Objectors are parties to the case. That question logically precedes the realignment analysis, so Objectors address it first. Objectors are parties, and they became parties upon filing their timely objections.

Start with black-letter law. Objectors will be considered parties *on appeal* if the proposed settlement is approved and the class is certified over their objections. Supreme Court precedent conclusively establishes as much. *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002) (answering in the affirmative the question "whether [an objecting class member] should be considered a

18

'party' for the purposes of appealing the approval of the settlement"). That holding flowed from the Court's determination that "[n]onnamed class members . . . may be parties for some purposes and not for others." *Id.* at 9–10. Whether an unnamed class member is considered a party depends on "the applicability of various procedural rules that may differ based on context."[2] *Id.* And because unnamed class members are "parties to the proceedings in the sense of being bound by the settlement," they are "allowed to appeal the approval of a settlement when they have objected at the fairness hearing." *Id.*

That "power to appeal is limited to those nonnamed class members who have objected." *Id.* at 11. In other words, it is the act of *appearing* in court and *objecting* that converts one from an absent class member to a party. If an

---

[2] For example, unnamed class members are "parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them." *Id.* at 10. And they are parties for diversity purposes. Consider a proposed nationwide class action filed by a single Missouri class representative against a single Missouri defendant. A Missouri federal district court no doubt has jurisdiction over that case under 28 U.S.C. § 1332(d)(2)(A). But there is the required minimal diversity *only* because the absent class members are considered "parties" for diversity purposes. *Cf. State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (Article III's irreducible minimum requires "two adverse *parties*" that "are not co-citizens" (emphasis added)).

Appellate Case: 26-2217    Page: 31    Date Filed: 08/06/2026 Entry ID: 5669459

objector is a party in the appellate court for purposes of litigating their objection—as *Devlin* holds—then he *must* be a party for the same purpose in the trial court, too. The objector is not a mere *amicus curiae* providing the trial court with his academic views on the law. Instead, the objector exercises *his* right to litigate *his* opposition to a proposed settlement that will extinguish *his* rights. The objection procedures here underscore that dynamic. Objectors had to file their objections on the court's docket. App.530, R.Doc. 1-8 ¶ 34. Their attorneys had to appear in the case and even file a sworn declaration attesting to their representation. App.531, R.Doc. 1-8 ¶ 36. And Objectors had to subject themselves to discovery from the Settling Parties. App.532, R.Doc. 1-8 ¶ 38. The preliminary approval order, if anything, required Objectors to do *more* than what is required of ordinary parties.

If the trial court overrules those objections and approves the settlement, that is a "final decision of [their] right or claim." *Devlin*, 536 U.S. at 9 (quoting *Williams v. Morgan*, 111 U.S. 684, 699 (1884)). And Objectors have the "right to appeal," a right that "cannot be effectively accomplished through the named class representative" given the objectors' "interests by definition diverge from those of the class representative." *Id.*

20

Given that an objector is a "party" on appeal for purposes of litigating the trial court's decision to overrule his objections, he must also be a "party" in the trial court for purposes of litigating his objections in the first instance. Again, it is the act of objecting—not the trial court's decision to overrule those objections—that converts an absent class member into a party. *Devlin* says as much: "Just as class action procedure allows nonnamed class members to object to a settlement at the fairness hearing without first intervening, it should similarly allow them to appeal the District Court's decision to disregard their objections." *Id.* at 14 (citation omitted).

The Settling Parties resisted this logic below. They insisted that it is only once a class is *certified* that objectors become parties. They relied on *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011), which held that a truly *absent* member to a proposed class that a district court declined to certify was not a "party" to that action for preclusion purposes. The Settling Parties cling to the Court's quote of Justice Scalia's dissent in *Devlin*, where he described the "argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*" as "novel and surely erroneous." *Id.* (quoting *Devlin*, 536 U.S. at 16, n.1 (Scalia, J., dissenting)). But the Settling

Appellate Case: 26-2217    Page: 33    Date Filed: 08/06/2026 Entry ID: 5669459

Parties simply read a "bit[] of gratuitous language for a good deal more than [it is] worth." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025).

*Bayer* did not involve an *objecting* class member. An objecting class member is no longer absent and "nonnamed." He names himself by *appearing* in court in pursuit of his rights in the action. By contrast, *Bayer* involved two proposed class actions—one in federal court and another in state court—seeking certification of essentially the same class for essentially the same claims. After the federal court denied class certification, Bayer (which is, coincidentally, Monsanto's parent company) argued that the named plaintiff in the state case—who was *not* a class representative in the federal case but would have been a class member had it been certified—was precluded under party preclusion principles from seeking class certification in state court. *Bayer*, 564 U.S. at 313. The relevant question in *Bayer* was whether a *truly absent* member to a proposed class action was a "party" to that action bound by the district court's judgment denying certification. The Court said "no," emphasizing that an unnamed class member "whom the plaintiff in [the federal] lawsuit was denied leave to represent" was not a party for preclusion purposes. *Id.* But the Court did not address whether the

Appellate Case: 26-2217     Page: 34     Date Filed: 08/06/2026 Entry ID: 5669459

plaintiff there *would have been* a party for preclusion purposes had he litigated objections in the federal case.

A simple hypothetical reveals that *Bayer* cannot apply the way the Settling Parties insist it does. Suppose the trial court here ultimately *sustains* Objectors' objections and *refuses* to certify the class or approve the settlement. If the trial court certifies that order for interlocutory appeal, who will defend the trial court's decision? After all, both Monsanto and the Named Plaintiffs will argue on appeal that it should be *reversed*. Are Objectors not party-appellees because the class was never certified based on their *successful* arguments *in court*? Under the Settling Parties' theory of *Bayer*, they are not. Objectors, in the Settling Parties' view, remained complete strangers to the trial-court action because of what happened afterward (the denial of certification). This makes precisely zero sense.

Now consider *Devlin*'s application where the objections are overruled. The Supreme Court removed all doubt that Objectors would be appellants because each is "considered a 'party' for the purposes of appealing" the order. *Devlin*, 536 U.S. at 7. Why? Precisely *because* they (unsuccessfully) litigated those positions in the district court. Party status does not spring to life only after the court rules. The same participation that entitles objectors

23

to appeal an adverse certification order allows them to oppose certification before the order is entered. The Settling Parties' interpretation of *Bayer* and *Devlin* would lead to the absurd result that an objector is a party to the appeal of an order granting certification, but not an order denying certification. That would leave *no appellee* to defend the trial court's order denying certification—even though that order *rested on* the very arguments pressed *by the objector*. That cannot be the rule.

The procedural rule that vests absent class members with the right to object confirms the point. Rule 23(e) cannot be interpreted to deny objectors party status during settlement approval proceedings. That would contravene the Rules Enabling Act's requirement that the rules of procedure "shall not abridge" any "substantive right." 28 U.S.C. § 2072. *See also Amchem*, 521 U.S. at 613 ("Rule 23's requirements must be interpreted in keeping with . . . the Rules Enabling Act."). The right to pursue a chose in action in tort is a longstanding substantive right. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 807 (1985). That right cannot be extinguished without allowing the holder of the claim to participate in litigation *as a party.* If Rule 23 permits a judgment approving a settlement that extinguishes absent class members' claims, as it clearly does, the *same rule* affords those *same class*

24

*members* meaningful *participation* in the adjudication of that judgment. "Rule 23, which must be interpreted with fidelity to the Rules Enabling Act and applied with the interests of absent class members in close view, cannot carry the large load [the Settling Parties] hea[p] upon it." *Amchem*, 521 U.S. at 629.

Any doubt about the party status of objectors in the abstract is removed by "the applicability of [the] procedural rules" that control party status *vel non. Devlin*, 536 U.S. at 10. Courts *must* allow class members to exercise their right to object. *See Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988). And in this case, specifically, the state court *required* any class member who wished to exercise that right to appear in court, litigate their objections citing evidence and law, and subject themselves to discovery. App.530–32, R.Doc. 1-8 ¶¶ 34-38. In other words, the "procedural rules," *Devlin*, 536 U.S. at 10, here *required* Objectors to become parties or else waive their rights. Even if there are some "context[s]" where the "various procedural rules" suggest an absent class member does not become a party by objecting, *id.*, that is not this case. *Devlin* and *Bayer* thus confirm that absent class members become parties when they timely object to a proposed

25

settlement. By filing their objections, Objectors became parties to the case *before* removing.

## II. The District Court Was Required To Realign Objectors As Defendants With The Right To Remove.

The district court ordered remand for one erroneous reason: Objectors here "are not defendants in the action" and therefore "have no basis upon which to remove it" under 28 U.S.C. § 1441(a). App.1630–31, R.Doc. 93 at 2–3. It reached that conclusion with *no analysis*. But who qualifies as "the defendant" is a question of federal law that turns on the parties' actual positions in the controversy, not the labels assigned by the pleader. Courts must look beyond the pleadings, identify the principal purpose of the action, and align the parties according to the relief they seek. Only then may the court decide whether removal was proper.

Applied here, the result is clear. This action was filed for one purpose: to secure judicial approval of a settlement that the Settling Parties had already inked before jointly presenting it to the state court. Since the moment this case was filed, Monsanto and Named Plaintiffs have sought precisely the same relief. Objectors alone oppose that relief. The only proper alignment in this case puts the Settling Parties on one side and Objectors on

26

the other. That conclusion adheres to the binding precedent that establishes only defendants to the action initiated by the complaint—and not counterclaim or crossclaim defendants to a separate pleading—may remove.

### A. Who "The Defendants" Are Turns On The Realities Of The Dispute.

Nobody disputes that only "the defendant or the defendants" may remove. 28 U.S.C. § 1441(a). But the operative question remains. In this settlement-only class action, who really are "the defendants"?

In answering that question, the district court determined that Objectors cannot be defendants because they were listed on the wrong side of the case caption. But "the way the parties align themselves in the pleadings is not dispositive." *Qatalyst Inc. ex rel. Expect Quest, LLC v. Pipes.AI, LLC*, No. 25-11396, 2025 WL 3124894, at *2 (11th Cir. Nov. 7, 2025) (per curiam); *see also* 5A *Wright & Miller's Federal Practice & Procedure* § 1321 (4th ed., database updated Apr. 2026) ("[T]he caption is not determinative as to the identity of the parties to the action"). Instead, "[f]or the purpose of removal, the federal law determines who is [a] plaintiff and who is [a] defendant." *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954). The nominal designation of the parties in state court does not "end[] the case"

27

because federal courts "must construe the act of Congress regarding removal" to determine what "the word 'defendant' as there" means. *Mason City & Fort Dodge R.R. Co. v. Boynton*, 204 U.S. 570, 579 (1907) (Holmes, J.).

That is true even where a particular party designation is *required* by state law. Even that—a procedural requirement laid down by a separate sovereign—does not control the federal court's determination of who counts as "a defendant within the meaning of the removal statute." *Id.* at 574. "The word 'defendant' as there used is directed toward more important matters than the burden of proof or the right to open and close." *Stude*, 346 U.S. at 579. Courts must look to "the mainspring of the proceedings from beginning to end" to identify the true defendant. *Mason City*, 204 U.S. at 580. In other words, identification of "the defendant" turns on what the parties *seek*, not what they are *called*.

*Mason City* and *Stude* involved state statutes that required a particular party alignment in state court. In *Mason City*, the state-court plaintiff (as designated by statute) removed, and the Court held that removal was proper because that party was a defendant, notwithstanding the state law. *Stude* involved the converse—the state-court defendant (as designated by statute)

28

Appellate Case: 26-2217     Page: 40     Date Filed: 08/06/2026 Entry ID: 5669459

removed, and the Court held that removal was improper because that party was a plaintiff, notwithstanding the state law.

If even a *state statute's* "procedural provisions cannot control the privilege of removal granted by the federal statute," *Stude*, 346 U.S. at 580, then the plaintiff's (or, in this case, the Settling Parties') designations cannot either. Instead, "[w]hat *is* determinative . . . is the alignment of the parties' interests." *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 630 (7th Cir. 2013) (emphasis added). "[A] defendant under § 1441 is a party whose interests are in opposition to the plaintiff's interests." *Id.* at 629 (citing *City of Vestavia Hills v. Gen. Fid. Ins.*, 676 F.3d 1310, 1314 (11th Cir. 2012)). And in considering the party alignment, "if a participant in a judicial proceeding has all the qualities of a defendant, then inductive reasoning tells us that the participant must, in fact, be a defendant." *Id.* at 630.

**B.     Federal Courts Are Required To Realign The Parties According To Their Actual Interests In The Case.**

Given that background rule, it is no wonder that federal courts have a "duty" to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis*, 314 U.S. at 69 (citation omitted). "The court *must* inquire into 'the principal purpose of the suit' and

29

the 'primary and controlling matter in dispute'" to determine whether there is an "actual and substantial" controversy. *Universal Underwriters Ins. v. Wagner*, 367 F.2d 866, 870 (8th Cir. 1966) (emphasis added) (quoting *Dryden v. Dryden*, 265 F.2d 870, 873 (8th Cir. 1959)). The inquiry is not optional: "federal courts are *required* to realign the parties in an action to reflect their interests in the litigation." *City of Vestavia Hills*, 676 F.3d at 1313 (emphasis added).

The district court did not even attempt to carry out that "duty." *City of Indianapolis*, 314 U.S. at 69. It baldly concluded that, because Objectors were not identified as defendants in the Class Petition, they "are not defendants in the action" and therefore "have no basis upon which to remove it" under 28 U.S.C. § 1441(a). App.1630–31, R.Doc. 93 at 2–3. The district court's failure to even *consider* realignment was reversible error all by itself. *See City of Vestavia Hills*, 676 F.3d at 1314.

Because the district court did not explain its decision, its true rationale is anyone's guess. Perhaps the district court credited Monsanto's argument that realignment has never been "used to allow removal." App.951, R.Doc. 17 at 11; *see also* App.1623, R.Doc. 88 at 11–12 (arguing realignment applies only "in the limited context of whether suits *originally filed* in federal court

30

(rather than removed) could proceed under diversity jurisdiction" (cleaned up)). If so, that was error. Realignment is regularly applied in removed cases. The post-removal context is, in fact, where the realignment doctrine *typically* does its work.

Indeed, courts have carried out their realignment duty post-removal for nearly 150 years. As early as 1879, the Supreme Court held—in a case aptly titled "*Removal Cases*"—that "the mere form of the pleadings may be put aside, and the parties placed on different sides of the matter in dispute according to the facts. This being done, when all those on one side desire a removal, it may be had, if the necessary citizenship exists." *Removal Cases*, 100 U.S. (10 Otto) 457, 469 (1879). The Court has continued applying the realignment doctrine in the removal context ever since. *See, e.g.*, *Pac. R.R. v. Ketchum*, 101 U.S. (11 Otto) 289, 298 (1879) (noting federal courts "might take jurisdiction without regard to the position the parties occupied in the pleadings as plaintiffs or defendants" by "ascertain[ing] the real matter in dispute, and arrang[ing] the parties on one side or the other of that dispute"); *Corbin v. Van Brunt*, 105 U.S. (15 Otto) 576, 577–78 (1881) (affirming remand because it was "apparent from the pleadings that citizens of New York are the only parties interested" in "the real controversy" and thus "occupy both

31

sides of that part of the controversy"); *Evers v. Watson*, 156 U.S. 527, 532 (1895) ("The power of the court under the act of 1875 thus to rearrange the parties, and to place them on different sides of the matter in dispute according to the actual facts, has been recognized by this court in several cases." (citations omitted)); *Venner v. Great N. Ry. Co.*, 209 U.S. 24, 31–32 (1908) (citing cases in support of its assumption "that the court may disregard the arrangement of parties made by the pleader, and align them upon the side where their interest in and attitude to the controversy really place them"). Those post-removal realignment cases are the very ones (among others) the Supreme Court cited to explain the "familiar doctrines governing the alignment of parties," which "have consistently guided the lower federal courts and this Court." *City of Indianapolis*, 314 U.S. at 69–70.

This is not some dormant, ancient doctrine. The federal courts of appeal uniformly apply realignment post-removal in modern cases. *See, e.g.*, *Littlefield v. Acadia Ins.*, 392 F.3d 1, 4 n.2 (1st Cir. 2004); *Broidy v. State Mut. Life Assur. Co. of Worcester, Mass.*, 186 F.2d 490, 492 (2d Cir. 1951); *Yellowbird Bus Co. v. Lexington Ins.*, 450 F. App'x 213, 216 (3d Cir. 2011) (unpublished); *Godwin v. Farmers New Century Ins.*, 123 F. App'x 97, 98–99 (4th Cir. 2005) (unpublished); *Ashford v. Aeroframe Servs., L.L.C.*, 96 F.4th 783, 796 (5th Cir.

32

2024), *cert. denied*, 145 S. Ct. 1047 (2025); *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559–60 (6th Cir. 2010); *Randolph v. Emp.'s Mut. Liab. Ins. of Wis.*, 260 F.2d 461, 463–64 (8th Cir. 1958); *Standard Oil Co. v. Perkins*, 347 F.2d 379, 382 (9th Cir. 1965); *City of Vestavia Hills*, 676 F.3d at 1314. There is zero doubt that realignment applies in the removal context.

Perhaps the district court credited the Named Plaintiffs' similarly baseless argument that realignment applies only to "defeat or confirm diversity jurisdiction" but never to "confer on anyone a statutory removal right."[3] App.1127, R.Doc. 25 at 11. But that, too, is wrong. "[T]he federal court may realign the parties according to their real interests, as it can in a case originally instituted in a federal court, before deciding *whether a true 'defendant' is seeking removal* to federal court." 14C *Wright & Miller's Federal Practice & Procedure (Juris.)* § 3730 (Rev. 4th ed., database updated Apr. 2026) (emphasis added). Courts have determined whether a party is a "defendant" under the removal statute by assessing the proper party alignment for more than a century. *See Mason City*, 204 U.S. at 578–80 (realigning the state-court

---

[3] Monsanto pressed the same argument. *See* App.1622, R.Doc. 88 at 11.

33

plaintiff as a defendant with the right to remove); *Stude*, 346 U.S. at 580–81 (realigning the state-court defendant as a plaintiff with no right to remove).

And even if there were no long history of identifying "the defendants" by assessing the *proper* party alignment, that would be no reason not to faithfully apply the doctrine to that question. Courts regularly apply realignment to other provisions of the removal statute that have nothing to do with diversity jurisdiction. For example, they use the realignment of named defendants as plaintiffs to "cure[] the defect[] in the removal notice by . . . excusing [the removing defendant's] failure to comply with the rule of unanimity." *Gurney's Inn Resort & Spa Ltd. v. Benjamin*, 743 F. Supp. 2d 117, 126 (E.D.N.Y. 2010); *see also McKeen v. Cont'l Cas. Co.*, No. 10-10624, 2010 WL 3325200, at *2 (E.D. Mich. Aug. 19, 2010) (realignment of a defendant to a plaintiff meant that party's consent to removal was not required); *Shouman v. Schouman*, No. Civ. A. 96-11588-REK, 1996 WL 721195, at *4–5 (D. Mass. Dec. 10, 1996) ("I conclude that it is appropriate to realign [a defendant] as a plaintiff and to hold that removal will not be defeated solely because of his failure to consent."). Similarly, courts find that the forum-defendant rule does not prevent removal when the forum defendant is realigned as a plaintiff. *See, e.g.*, *Telekenex, Inc. v. Axis Reinsurance Co.*, No. C12-1617-JCC,

34

2012 WL 13028156, at *3 (W.D. Wash. Nov. 27, 2012); *Universal Concrete Prods. Corp. v. Peerless Ins.*, No. CCB-08-00317, 2008 WL 4104171, at *5 (D. Md. Aug. 21, 2008).

The rationale for applying realignment to nonjurisdictional rules is straightforward. "If the Court may realign the parties before assessing diversity under § 1441(a), it makes little sense to impose a mechanical restriction to that practice based on [the forum defendant rule]." *Grand China Buffett & Grill, Inc. v. State Auto Prop. & Cas. Co.*, No. 1:16-cv-159, 2016 WL 6078343, at *6 (N.D. W.Va. Oct. 17, 2016). Indeed, because realignment can establish subject-matter jurisdiction, it *a fortiori* applies to nonjurisdictional rules for removal. If federal courts can realign defendants as plaintiffs to *create* federal jurisdiction, of course they can realign a plaintiff as a defendant in a case where federal jurisdiction is *undisputed*. That logic holds especially true in this context, where federal courts have looked to the proper party alignment to identify who counts as a "defendant" since at least 1907. *Mason City*, 204 U.S. at 579.

In truth, courts have *always* made the realignment determination before turning to the question of removability. *E.g.*, *Removal Cases*, 100 U.S. at 469; *Venner*, 209 U.S. at 31–32. "The seldom stated, but sensible rationale"

35

for determining realignment first "is that jurisdictional consequences should not be determined until the parties are properly aligned according to their interests." *Lott v. Scottsdale Ins.*, 811 F. Supp. 2d 1220, 1223 n.4 (E.D. Va. 2011). Thus, the district court was "required," *City of Vestavia Hills*, 676 F.3d at 1313, to "realign[] the parties . . . before determining whether the requirements of the removal statute . . . were satisfied," *Telekenex*, 2012 WL 13028156, at *3 (citation omitted) (holding that is the "proper course").

## C. Objectors Are Defendants Because They Are The Only Parties Opposing The Relief Sought In The Case.

Had the district court carried out its duty to assess the parties' alignment, it would have inexorably determined that Objectors are the defendants. In this Circuit, realignment is required where there is no "actual and substantial" controversy between a plaintiff and a putative defendant concerning "the principal purpose of the suit," meaning the "primary and controlling matter in dispute." *Universal Underwriters*, 367 F.2d at 870 (citations omitted). The court must "look beyond the pleadings" to determine "[w]hether the necessary 'collision of interest' exists." *City of Indianapolis*, 314 U.S. at 69–70 (citation omitted); *Dryden*, 265 F.2d at 874. That

36

requires courts to examine "the actual realities of [the] litigation." *City of Indianapolis*, 314 U.S. at 70.

For example, in *City of Indianapolis*, because a defendant (as identified in the complaint) was effectively a "partner[] in litigation" with the plaintiff, that defendant had to be realigned as a plaintiff. *Id.* at 74. Similarly (but conversely), where a plaintiff (as identified in the complaint) is "in fact, more appropriately aligned as a defendant," they must be "realigned as a defendant." *Qatalyst*, 2025 WL 3124894, at *1; *see also Agyei ex rel. Jenkins v. Missouri*, 807 F.2d 657, 682 (8th Cir. 1986) (affirming district court's decision disregarding the designation of a party "as a party plaintiff and realigning it as a defendant"). So regardless of whether a court is determining if a plaintiff should instead be a defendant or if a defendant should instead be a plaintiff, the inquiry is the same: whether that party has a "collision of interest" with the other parties.

Looking to "the actual realities of [the] litigation" here, there is no doubt that the Settling Parties' interests are aligned against Objectors. Objectors' Notice of Removal explained that the Settling Parties' interests "are perfectly aligned" because "[t]he Class Petition was filed for a singular purpose: to obtain approval of the Proposed Settlement." App.16, R.Doc. 1

37

at ¶ 23. Neither Monsanto nor Named Plaintiffs meaningfully contested that point. Named Plaintiffs argued that the realignment analysis is *confined to the pleadings*, but the entire point of realignment is to *look beyond the pleadings*. *See* App.1128, R.Doc. 25 at 12 ("removal analysis is the one defined by the pleadings: Plaintiffs sued Monsanto, Monsanto is the defendant, and the Class Action Petition seeks relief against Monsanto"). Named Plaintiffs also resorted to *hypothetical* disputes that *may* arise "after a class settlement is approved," App.1129, R.Doc. 25 at 13, which only underscores the lack of adversity *now*. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events." (cleaned up)). Monsanto noted only that "it is Monsanto who will have to make billions of dollars of payments if the Settlement is finally approved." App.952, R.Doc. 17 at 12. But that is the very relief Monsanto—hand-in-hand with Named Plaintiffs—*asks for* in this case.

Objectors also alleged that "Monsanto was as much a master of the Class Petition as the Named Plaintiffs, and played a substantial role in drafting it and approving its contents." *Id.* Tellingly, neither Monsanto nor Named Plaintiffs contested that well-pleaded allegation, so it must be accepted. *Dart Cherokee*, 574 U.S. at 87. That undisputed fact should be the

Appellate Case: 26-2217     Page: 50     Date Filed: 08/06/2026 Entry ID: 5669459

end of the analysis. The number of *real* defendants who draft the complaint against themselves is exactly zero.

Monsanto and Named Plaintiffs have always been perfectly aligned on "the only question in dispute," which is "whether the proposed settlement should be approved." App.17, R.Doc. 1 at ¶ 25. On the other hand, Objectors "oppose the relief sought in the Class Petition," because it "is specifically designed to resolve, limit, and extinguish their claims against Monsanto." *Id.* at ¶ 26. Thus, "[t]he only 'collision of interests' in this case is between the Settling Parties and [Objectors]." *Id.* at ¶ 27. And because this action seeks to "bind [Objectors], adjudicate their rights, and extinguish their claims without their participation as named parties, they are properly characterized as defendants here." App.18, R.Doc. 1 at 10. Indeed, if Objectors are not the defendants, then this case *has no defendants*. Because Objectors are the only "part[ies] whose interests are in opposition to the plaintiff's interests," they are the "defendant[s] under § 1441." *GE Betz*, 718 F.3d at 629 (citation omitted).

Some Circuits assess realignment under the more stringent "actual and substantial conflict" test. *See* 13E *Wright & Miller's Federal Practice & Procedure (Juris.)* § 3607 (2007 Supp. at 417–18) (citation omitted). Under that test,

39

"[r]ealignment is only proper where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the suit." *Wolf v. Kennelly*, 574 F.3d 406, 413 (7th Cir. 2009) (citation omitted). The test focuses on "the points of substantial antagonism, not agreement." *Id.* at 412. If that standard applied, the result would be exactly the same. Here, there are no points of antagonism between Monsanto and Named Plaintiffs. Neither Settling Party said otherwise. "[I]t is perfectly clear that the interests of [Named Plaintiffs] and [Monsanto] in said cause of action are identical." *Dryden*, 265 F.2d at 874.

"What [Named Plaintiffs] want [Monsanto] wants and [Objectors] do[] not want." *City of Indianapolis*, 314 U.S. at 74. "On the other hand, the rights of [Objectors] are dependent on defeating the" proposed settlement. *Dryden*, 265 F.2d at 874. "Yet [Named Plaintiffs] and [Objectors] were made to have a common interest against [Monsanto] when, as a matter of fact, [Named Plaintiffs] and [Objectors] are opposed to one another." *City of Indianapolis*, 314 U.S. at 74. The only proper alignment of the parties here is Named Plaintiffs and Monsanto vs. Objectors.

Finally, the Settling Parties will likely resurrect their sky-is-falling argument that "on Objector Defendants' theory, *any* objector could remove

40

*any* state-court class settlement." App.951, R.Doc. 17 at 11. That is wrong. "The question of realignment . . . must be tested at the time of filing of the complaint." *Universal Underwriters*, 367 F.2d at 871 (citation omitted). So realignment could not apply to a later-developing alignment of interest (like a class settlement *following* contested litigation). *Ashford*, 96 F.4th at 796 (realigning the parties because the "parties' interests were aligned from the inception of litigation" and noting realignment "is to be determined by the plaintiff's principal purpose *for filing suit*." (citation omitted)).

The same goes for the removal analysis. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 390 (1998) ("[F]or purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court—prior to the time the defendants filed their answer in federal court." (citation omitted)). So in an ordinary class settlement following truly adversarial litigation, objecting class members cannot realign and remove. It is only where the supposed plaintiffs and defendants were *never* adverse that objecting class members must be realigned as defendants with removal rights.

41

**D. Realigned Defendants Are "The Defendants" Under §§ 1441(a) and 1453(b).**

Because the only proper alignment of the parties makes Objectors defendants, the only question remaining is whether realigned defendants are "the defendants" under §§ 1441(a) and 1453(b). The Supreme Court answered that question nearly 120 years ago, and again almost fifty years later. *Mason City*, 204 U.S. 570 (1907); *Stude*, 346 U.S. 574 (1954). And recent decisions by this Court's sister circuits confirm the rule. The "alignment of the parties' interests" is "determinative of a party's status under federal removal law." *GE Betz*, 718 F.3d at 630. "[A] defendant under § 1441 is a party whose interests are in opposition to the plaintiff's interests." *Id.* at 629 (citation omitted).

Below, the Settling Parties clung to the Supreme Court's line in *Home Depot U.S.A. v. Jackson*, that "the term 'defendant' refers only to the party sued by the original plaintiff," 587 U.S. 435, 437 (2019), to argue that only the party *identified* as the defendant in the complaint may remove. But that is not what *Home Depot* held.

There, the Court "consider[ed] whether 28 U.S.C. § 1441(a) permits a third-party counterclaim defendant to remove a claim filed against it." *Id.* at

42

440. The Court held the statute does not. It is critical to be clear about what kind of "defendant" attempted to remove in *Home Depot.* The rules of procedure "differentiate between third-party defendants, counterclaim defendants, and defendants." *Id.* The party who "respond[s] to" the plaintiff's "claim for relief," is the defendant to the *action* as set out in that claim for relief. Fed. R. Civ. P. 8(a), (b). If that defendant asserts a counterclaim against the original plaintiff, the original plaintiff is a counterclaim defendant *to that counterclaim.* Fed. R. Civ. P. 13(a). If an original defendant asserts a crossclaim against a co-defendant, the co-defendant is a crossclaim defendant *to that crossclaim.* Fed. R. Civ. P. 13(g). If an original defendant asserts a claim against a third party, that third party is a "third-party defendant" *to that "third party complaint."* Fed. R. Civ. P. 14(a) (emphasis added). And if a third party is "first brought into the case as an additional defendant to a counterclaim asserted against the original plaintiff" by the original defendant, that third party is a "third-party counterclaim defendant" *to that counterclaim. Home Depot*, 587 U.S. at 440 n.1.

The Court acknowledged that a third-party counterclaim defendant "is a 'defendant' to a 'claim.'" *Id.* at 441. But, the Court noted, § 1441(a) refers to "'civil actions,' not 'claims.'" *Id.* And whether a case is removable turns

43

on "whether that action could have been brought originally in federal court." *Id.* (citing *Mexican Nat'l R. Co. v. Davidson*, 157 U.S. 201, 208 (1895)). Because "a counterclaim is irrelevant to whether the district court had 'original jurisdiction' over the civil action," "Section 1441(a) . . . does not permit removal based on counterclaims at all." *Id.* at 441–42. *That* is the reason a third-party counterclaim defendant cannot remove a case to federal court. It is because the "action" to which he is a defendant is the "action" set out in the counterclaim, which can *never* "serve as the basis for 'arising under' jurisdiction." *Id.* (quoting *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002)).

Counterclaim defendants, crossclaim defendants, third-party defendants, and third-party counterclaim defendants are not defendants to "the action as defined by the plaintiff's complaint." *Id.* at 442. In other words, third-party counterclaim defendants are treated the same way any other counterclaim defendant has been treated for nearly a century. *Id.* at 443 (discussing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 106–09 (1941)).

Below, the Settling Parties insisted that *Home Depot*'s holding was instead that only the "party sued by the original plaintiff" is the party identified in the complaint as a defendant. App.948–49, R.Doc. 17 at 8–9. If

44

that were true, *Home Depot* would have overturned the century-old precedent that courts must look beyond the pleadings to determine who "the defendant" to the action is. *Mason City*, 204 U.S. at 580; *Stude*, 346 U.S. at 580. But the Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000). Removal by a realigned defendant *to the original action* is perfectly consistent with *Home Depot*.

At any rate, the district court did not even rely on (or discuss) *Home Depot*. Instead, it relied on a single out-of-circuit and inapt authority to conclude that "Objectors are not defendants in the action" because § 1441(a) "'specifically limits the ability to remove to the "defendant or the defendants," and contains no language allowing mistakenly omitted parties, wrongly excluded parties, or any other type of non-defendant to remove an action to federal court.'" App.1630–31, R.Doc. 93 at 2–3 (quoting *Sharma v. Deutsche Bank Nat'l Tr. Co. ex rel. HSI Asset Loan Obligation Tr. 2007-1*, 23 F.4th 1167, 1170 (9th Cir. 2022)).

*Sharma* does not even purport to apply to this situation. It involved removal by an aggrieved entity that did not appear in state court. The Ninth Circuit reversed because that entity was not even in the case, even if it should

45

have been. *Id.* The Ninth Circuit said *nothing* about the status of named, appearing objectors or their party status. *Cf. supra*, § I. And it said *nothing* about realignment, which was not even arguably at issue in the case.

The only proper alignment of the parties here makes Objectors the defendants "[to] the action as defined by the plaintiff's complaint." *Home Depot*, 587 U.S. at 442. They are the only parties "whose interests are in opposition to the plaintiff's interests." *GE Betz*, 718 F.3d at 629 (citation omitted). The removal was proper, and the district court's order of remand should be reversed.

## III. Even Without Realignment, Objectors Became Defendants By Intervening As Of Right.

The district court should have conformed the pleadings to reality by realigning Objectors as defendants with the right to remove. But that was not the only reason remand should have been denied. Objectors' timely motion to intervene under Rule 24(a) provides an independent basis for reversal. *See* App.1572, R.Doc. 84. After all, "[m]embers of a class have a right to intervene if their interests are not adequately represented by existing parties." *Standard Fire*, 568 U.S. at 594 (citation omitted). Accepting Objectors' allegations, the inadequacy of representation is ineluctable.

46

District courts are always free to "add or drop" parties, Fed. R. Civ. P. 21, and they sometimes have an *obligation* to do so. In the removal context specifically, Congress authorized courts to "issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise." 28 U.S.C. § 1447(a). These rules reflect that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966), *superseded by statute on other grounds in* 28 U.S.C. § 1367(c)(3). The only constraint on that impulse is subject matter jurisdiction: the "prerequisite to the 'ancillary proceeding' of intervention" is "an already-existing suit within [the court's] jurisdiction." *Vill. of Oakwood v. State Bank & Tr. Co.*, 481 F.3d 364, 367 (6th Cir. 2007) (citation omitted).

Because there is undoubtedly federal jurisdiction over this case, *see* 28 U.S.C. § 1332(d), the district court had to grant Objectors' motion to intervene. But it (implicitly) denied that motion and ordered remand instead. That error provides an additional ground for jurisdiction and reversal.

Appellate Case: 26-2217     Page: 59     Date Filed: 08/06/2026 Entry ID: 5669459

### A. Objectors Had A Right To Intervene.

The district court was required to grant Objectors' intervention request before assessing remand. Courts "*must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a) (emphasis added). "A court ruling on a motion to intervene must accept as true all material allegations in the motion to intervene and must construe the motion in favor of the prospective intervenor." *Nat'l Parks*, 759 F.3d at 973 (citation omitted) (noting the standard is "identical to" the Rule 12(b)(1) standard). The district court had to "assume the plaintiff will receive the relief it seeks and, from that assumption, assess the sufficiency of the prospective intervenor's motion." *Id.* (citing *Am. Civ. Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092 (8th Cir. 2011)). That focus on "the underlying pleadings . . . provides a prospective intervenor a stable source to determine whether intervention is prudent." *Id.*

A proposed intervenor need only establish that he has standing and meets the requirements of Rule 24(a). Objectors easily established both. Ordinarily, to establish standing, "a plaintiff must show (i) that he suffered

48

an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). But in the intervention context, the focus is on the relief sought (not the conduct complained of) in the action.

So, for the injury-in-fact inquiry, the question is whether Objectors "would . . . be harmed" "if the court here grants the [Named Plaintiff's and Monsanto's] relief." *Nat'l Parks*, 759 F.3d at 975. Of course they would. If the proposed settlement is approved, Objectors' very right to pursue their claims against Monsanto will be extinguished in exchange for pennies on the dollar. Whereas Roundup victims who vigorously litigated their claims have obtained up to nine-figure verdicts, Objectors' effective recoveries under the proposed settlement would be capped at less than $100,000. That is about as "concrete, particularized, and actual" an injury as one can imagine. *TransUnion*, 594 U.S. at 423.

For causation, the question is whether Objectors could "trace [their] injury to [Monsanto] through the would-be court order if [Named Plaintiffs] obtain relief." *Nat'l Parks*, 759 F.3d at 975. Objectors' injuries—the effective *loss* of their claims against Monsanto—would be traceable *only* to "the

49

would-be court order if [Monsanto and Named Plaintiffs] obtain" approval of the settlement. *Id.*

For redressability, the question is whether Objectors' requested relief "seeks to prevent [Named Plaintiffs and Monsanto] from obtaining an order imposing [their requested relief]." *Id.* That is, of course, precisely the relief Objectors seek. If the trial court sustains their objections, it will deny approval of the settlement, and Objectors' Roundup claims will survive. "If [Objectors] prevail, [they] avoid" being bound by the settlement. *Id.* at 975. Objectors have standing to intervene.

Objectors similarly meet Rule 24(a)'s requirements for intervention of right. Under Rule 24(a)(2), intervention *must* be allowed if Objectors show they "(1) ha[ve] a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." *Johnson*, 800 F.3d at 451–52 (cleaned up); *see also Nat'l Parks*, 759 F.3d at 978 (identifying same elements, plus a timeliness element). Objectors readily made that showing below.

Intervention here turns almost exclusively on the third prong (adequate representation by the existing parties) because the "recognized interest" and "impairment" prongs are "satisfied by the very nature of Rule

50

23 representative litigation." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005). "When absent class members seek intervention as a matter of right, the gravamen of a court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation." *Id.*; *see also Grainger v. Ottawa Cnty.*, 90 F.4th 507, 514–15 (6th Cir. 2024) (similar). Indeed, both the text and history of Rule 23 "explicitly envision intervention as a means of securing adequacy of representation." *SEECO*, 865 F.3d at 1024–25 (quoting 3 William B. Rubenstein, *Newberg on Class Actions* § 9:34 (5th ed. 2013 & Supp. 2017)); *see also Standard Fire*, 568 U.S. at 594 (class members "have a right to intervene if their interests are not adequately represented by existing parties" (citation omitted)). The advisory committee notes, for example, state that "a member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court." *SEECO*, 865 F.3d at 1026 (quoting Fed. R. Civ. P. 24 Advisory Comm. note to 1966 amendment).

Objectors readily make that showing here. The very basis for their objections is that Named Plaintiffs colluded with Monsanto to ram through a "rushed, inadequate settlement" that is specifically designed to "extinguish Objectors' rights." App.539–40, R.Doc. 1-9 at ¶ 1. How could a

51

named plaintiff whose interests perfectly align with the putative defendant's adequately represent absent class members? In an ordinary class action, the named plaintiff represents absent class members by vigorously litigating contested claims *against* the defendant. But here, Monsanto "was as much a master of the complaint as the Named Plaintiffs," having "reviewed, drafted, and blessed the class action Petition." App.1077, R.Doc. 17-6 at ¶ 2. None of that is in dispute; Class Counsel *admitted* as much. App.540, R.Doc. 1-9 at ¶ 3.

Accepting Objectors' allegations, this is a collusive "reverse auction" settlement, where Monsanto "pick[ed] the most ineffectual class lawyers to negotiate a settlement with in the hope that the [state] court will approve a weak settlement that will preclude other claims against the defendant." *Swinton*, 960 F.3d at 1005 (quoting *Reynolds*, 288 F.3d at 282). The *entire purpose* of the settlement is to bar the untold thousands of existing and future claims against Monsanto. That on its own shows inadequacy of representation. *Id.* ("A collusive reverse auction would satisfy the inadequate representation requirement."). Because "the representative plaintiffs and the defendan[t] str[u]ck a deal, intervention by [these] member[s] of the class may be essential to protect the class's interests." *Alcarez v. Akorn, Inc.*, 99 F.4th 368, 375 (7th Cir. 2024), *reh'g and reh'g en banc*

52

*denied*, No. 18-2220, 2024 WL 2188476 (7th Cir. May 15, 2024), *and cert. denied*, 145 S. Ct. 377 (Oct. 15, 2024). Doubly so given intervention should be "freely" granted when "a class member contends that the representatives (or, more realistically, their lawyers) are misbehaving." *Id.* (citing cases).

And even if this were not a collusive scheme, Named Plaintiffs still could not adequately represent Objectors. The Named Plaintiffs either have different types of cancer than Objector Defendants or *do not have cancer at all.* App.540, R.Doc. 1-9 at ¶ 5. And, shockingly, they purport to waive all class members' claims without even bringing claims for negligence. App.541, R.Doc. 1-9 at ¶ 6. How could leaving viable claims on the table serve the class's interest?

Worse still, Class Counsel negotiated a deal that cabins class members' recovery to label-based warning claims based on a valuation that handicapped *for* preemption, but would have allowed Monsanto to *unilaterally* scrap the deal if the Supreme Court had found the claims are not preempted. *See id.* It is all upside for Monsanto, who successfully locked Named Plaintiffs into an undervalued deal while preserving its right to back out had it lost at the Supreme Court. It is no mystery why Class Counsel would agree to such a raw deal. They stand to reap a $675,000,000 windfall

Appellate Case: 26-2217     Page: 65     Date Filed: 08/06/2026 Entry ID: 5669459

for their role in extinguishing scores of class members' rights for pennies on the dollar. App.103, R.Doc. 1-4 (Class Counsel's fee petition). Under the proposed settlement, the clear winners are Monsanto and Class Counsel. The clear losers are the class members, including Objectors. If ever there was inadequate representation, it is here.

Monsanto has argued that Objectors should have simply opted out. App.1613, R.Doc. 88 at 8 ("Objectors may not like the Settlement, but they were free to opt out."). This Court has unambiguously rejected that rejoinder to defeat intervention. *SEECO*, 865 F.3d at 1024–25 (rejecting argument that "intervention as of right could be rejected simply because a class member may opt out and litigate separately").

Monsanto will also likely renew its argument that "[t]he district court never ruled on Objectors' motion to intervene." Monsanto's Reply in Support of Motion to Dismiss at 8 (July 8, 2026). That is wrong. The district court's determination that Objectors "are not defendants in the action" could only follow if the district court denied Objectors' motion to intervene. App.1631, R.Doc. 93 at 3. Even if the district court were reluctant to carry out its realignment duty, Rule 24(a) meant the Court *needed to* allow Objectors to

intervene as defendants. In other words, if the district court did not deny Objectors' motion to intervene, the order of remand could not have issued.

This is not some far-fetched theory, but rather the precedent of this Court. "[F]ailure to rule on a motion to intervene can be interpreted as an implicit denial, thus giving [the moving party] standing to appeal." *Toronto-Dominion Bank v. Cent. Nat'l Bank & Tr. Co.*, 753 F.2d 66, 68 (8th Cir. 1985). When a court does not expressly deny a motion but "issue[s] a final judgment inconsistent with a grant" of that motion, this Court "consider[s] [that] an implicit denial of the motion and proceed[s] to the merits . . . on appeal." *United States v. Craig*, 94 F.4th 752, 755 n.4 (8th Cir. 2024) (citation omitted). Because the court's intervention analysis necessarily would have "precede[d] the order of remand in logic and in fact," the district court denied intervention. *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1052 (8th Cir. 2006) (citation omitted). And that intervention denial "in fact precipitated[] the court's order remanding the" case. *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 742 (8th Cir. 2009).

As an alternative basis for reversal, the Court should hold that the district court erred in denying Objectors' motion to intervene before ordering remand. *See SEECO*, 865 F.3d at 1025 (vacating the "portion of the

55

district court's order denying [an unnamed class member's] motion to intervene based on her interest in adequacy of representation").

**B.    Objectors Are Aligned As Defendants Post-Intervention.**

Because Objectors have a right to intervene, the only question is their party status upon intervention. As discussed, "the alignment of the parties' interests" is "determinative" for that question. *GE Betz*, 718 F.3d at 630. Objectors' interests are plainly "in opposition to the plaintiff's interests," and so they are "defendant[s]." *Id.* at 629 (citing *City of Vestavia Hills*, 676 F.3d at 1314). Because Objectors' intervention would have made them "a participant in [the] judicial proceeding," and because they have "all the qualities of a defendant, then inductive reasoning tells us that the participant must, in fact, be a defendant." *Id.* at 630.

Rule 20(a) removes any doubt. It allows for "persons" to "be joined in one action as defendants" if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," so long as "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Those "flexible concepts . . . should be read as broadly as possible whenever doing so is likely to promote judicial economy." *Sparks Constructors, Inc. v.*

56

*Hartzell Hardwoods, Inc.*, No. 2:15-cv-00067-NCC, 2015 WL 7075964, at *3 (E.D. Mo. Nov. 13, 2015) (cleaned up).

Here, the underlying action presents only one "right to relief": approve a settlement that will *extinguish* Objectors' causes of action. Fed. R. Civ. P. 20(a)(2)(A). And whether that right to relief is granted will turn exclusively on "question[s] of law [and] fact common to all." Fed. R. Civ. P. 20(a)(2)(B). The only proper alignment of Objectors is as defendants.

### C. Objectors' Intervention Would Have Made Them The Very "Defendants" That Could Remove.

The district court ordered remand solely because, in its view, Objectors "are not defendants" under § 1441(a). App.1631, R.Doc. 93 at 3. But even setting realignment aside, Objectors' intervention would have *made them* "the defendants." And because § 1441(a) is not a jurisdictional statute, *Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1054 (8th Cir. 2020) (en banc), Objectors' intervention would have formed the very "basis upon which to remove" that the district court found lacking. App.1631, R.Doc. 93 at 3.

Indeed, courts regularly allow removing parties to cure procedural errors in removal *after* the notice of removal is filed. For example, a "procedural defect existing at the time of removal but cured prior to entry of

57

[summary] judgment does not warrant reversal and remand of the matter to state court." *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 970 (9th Cir. 2002) (citation omitted). So "[a] defendant is free to amend a notice of removal within the thirty-day period as set forth in § 1446(b)." *Moody v. Com. Ins. Co. of Newark, N.J.*, 753 F. Supp. 198, 201 (N.D. Tex. 1990) (citing cases). Post-removal events that fix a procedural error can render an otherwise unauthorized removal an authorized one, so long as the event occurs within the 30-day limit. *Id.* Some courts allow for post-removal events to cure an unauthorized removal even *after* the 30-day window. *See, e.g.*, *Klein v. Manor Healthcare Corp.*, 19 F.3d 1433, 1994 WL 91786, at *5 (6th Cir. 1994) (per curiam).

Here, even if Objectors' removal was unauthorized due to Objectors' party status, their joinder as defendants would render the removal authorized. And there is no doubt that the motion to intervene was made within the 30-day period required by § 1446(b)(1). Objectors did not receive notice of the proposed settlement until May 12, 2026. App.15, R.Doc. 1 at ¶ 18. They moved to intervene just 28 days later, on June 9, 2026. App.1572, R.Doc. 84. So even if Objectors were not "defendants" when they removed, their intervention unquestionably would have *made them* "defendants."

Appellate Case: 26-2217     Page: 70     Date Filed: 08/06/2026 Entry ID: 5669459

There is no good reason not to apply that principle to § 1441(a)'s requirement that only defendants may remove. After all, if a non-diverse defendant destroys diversity jurisdiction, a federal court may nonetheless obtain jurisdiction over the case by dropping the non-diverse defendant under Rule 21. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). Similarly, courts may use Rule 21 to add parties to cure a jurisdictional defect and maintain the federal action. *See Mullaney v. Anderson*, 342 U.S. 415, 416–17 (1952). And if, after removal, a non-diverse defendant is added to "destroy subject matter jurisdiction," the court may "permit joinder and remand the action to the state court." 28 U.S.C. § 1447(e). Those all involve federal courts adding or dropping parties to keep or destroy j*urisdiction*. If that is allowed, then courts may surely add defendants to ensure that the plainly *non*jurisdictional requirement under § 1441(a) is satisfied. *See Holbein*, 983 F.3d at 1054 (§ 1441(a) is nonjurisdictional); *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16 & n.14 (1951) (the absence of a "right to removal" poses no jurisdictional problem so long as the district court "would have had original jurisdiction" over the action). And especially so where, as here, any defect was cured within Section 1446's 30-day period.

# CONCLUSION

For these reasons, Objectors respectfully request that the Court reverse the district court's order of remand to the state court and remand to the district court with instructions to proceed to the merits.

Dated: August 3, 2026

Respectfully submitted,

*/s/ Ashley C. Keller*
Ashley C. Keller
John J. Snidow
KELLER POSTMAN LLC
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Tel.: 312-741-5220
ack@kellerpostman.com

T. Roe Frazer, II
R. Prescott Sifton, Jr.
FRAZER PLC
30 Burton Hills Blvd., Ste. 450
Nashville, TN 37215
Tel.: (615)647-6464
scott@frazer.law

*Counsel for Appellants*

60

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), it contains 12,812 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word in fourteen-point Book Antiqua font.

Pursuant to Circuit Rule 28A(h), I hereby also certify that electronic files of this Brief and accompanying addendum have been submitted to the Clerk via the Court's CM/ECF system. The files have been scanned for viruses and are virus-free.

*/s/ Ashley C. Keller*
Ashley C. Keller

Appellate Case: 26-2217      Page: 73      Date Filed: 08/06/2026 Entry ID: 5669459

# CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026, I electronically filed the foregoing Brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Ashley C. Keller*
Ashley C. Keller

62

Appellate Case: 26-2217    Page: 74    Date Filed: 08/06/2026 Entry ID: 5669459